**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-2224**

———————

JAMES MICHAEL ISERNIA,

         Plaintiff - Appellant,

    v.

DANVILLE REGIONAL MEDICAL CENTER; HSCGP, LLC,

         Defendants - Appellees.

———————

Appeal from the United States District Court for the Western District of Virginia, at Danville. Thomas T. Cullen, District Judge. (4:21-cv-00045-FL)

———————

Submitted: January 5, 2024                 Decided: May 13, 2024

———————

Before KING, GREGORY, and HARRIS, Circuit Judges.

———————

Reversed and remanded by unpublished opinion. Judge Gregory wrote the opinion, in which Judge King and Judge Harris joined.

———————

**ON BRIEF:** Thomas E. Strelka, Brittany M. Haddox, STRELKA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant. Yvette Gatling, Laura Saracina, LITTLER MENDELSON, P.C., Tysons Corner, Virginia, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Appellant Dr. James Michael Isernia filed suit asserting various claims under Virginia state law against Danville Regional Medical Center and HSCGP, LLC ("Appellees"). At the core of this case is an employment agreement between Dr. Isernia and Martinsville Physicians Practices, LLC, which assigned Dr. Isernia to work at a hospital owned and operated by Appellees. Although neither of the Appellees was party to the agreement, Appellees moved below to compel arbitration pursuant to a provision in the agreement. The district court granted Appellees' motion but certified the matter for interlocutory appeal asking us to determine who has jurisdiction over questions of arbitrability where a non-signatory seeks to compel arbitration pursuant to an agreement that delegates questions of arbitrability to an arbitrator.

Based on our decision in *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279 (4th Cir. 2023)[*], we conclude that a court, not an arbitrator, must determine whether a non-signatory to an agreement that contains an arbitration provision can enforce that provision against a signatory to the agreement. The district court held that the arbitrator had jurisdiction to determine questions of arbitrability between Dr. Isernia and Appellees without first assessing whether Appellees, as non-signatories, were entitled to invoke the arbitration provision under Virginia law. We therefore reverse the district court's decision and remand this case for further proceedings consistent with this opinion.

---

[*] We recognize that the district court, when it decided this case, lacked the benefit of our *Tug Hill* decision, rendered more than a year after its contested ruling.

I.

James Michael Isernia, M.D. is a physician with over twenty-five years of experience. J.A. 8 ¶ 10. Danville Regional Medical Center, LLC and HSCGP, LLC own Sovah Health-Martinsville ("Sovah Health"), a hospital Dr. Isernia worked at for several years until he was terminated. Throughout that period, Dr. Isernia held several leadership positions at Sovah Health, including Director of Cardiac Rehab, Director of Home Care, Medical Director of Hospice for over ten years, President of the Medical Staff, and Director of Peer Review.

In early 2020, Sovah Health conducted several staffing reassignments in response to the severe staffing shortages caused by the onset of the Coronavirus pandemic. As a part of this reassignment process, several members of Dr. Isernia's team were assigned to assist in other departments and at the hospital's front entrance. Dr. Isernia did not support the reassignment process. He repeatedly complained about the "lack of proper staffing" that it caused and reminded hospital officials that properly trained staff were necessary to ensure patient and employee safety. J.A. 9–10 ¶ 16. In response, he was told to "stick to doctoring." J.A. 9 ¶ 16. At some point before December 2020, Dr. Isernia also complained that outsourcing "scanning duties" for patient and narcotics records resulted in those records being "lost or scattered in different places." J.A. 12 ¶ 30. Dr. Isernia therefore kept his records in his office.

In August 2020, Dr. Isernia entered into a Physician Employment Agreement (the "Agreement") with Martinsville Physicians Practices, LLC. The Agreement, which became effective on September 1, 2020, defined "Employer" as "Martinsville Physician

3

Practices, LLC," and assigned Dr. Isernia to work at the "Affiliated Hospital," defined as "Sovah Health-Martinsville," for a three-year term. J.A. 35. The Agreement refers to Sovah Health several times, but was signed only by Dr. Isernia and Pamela J. Kane. J.A. 36. Dr. Isernia signed on behalf of himself and Kane signed on behalf of Martinsville Physician Practices, LLC. *Id.* Dr. Isernia began working at Sovah Health under the Agreement on September 1, 2020, although, as noted above, he had worked there for several years prior.

Around December 2020, Sovah Health audited Dr. Isernia's prescribing practices. As part of that review, "Compliance and Pharmacy/Quality team members" randomly selected ten patients from a list of "printed/faxed prescriptions" from September and October 2020. J.A. 10 ¶ 17. Neither Dr. Isernia nor his staff were included in or consulted during the audit. Rather, the auditors obtained information from individuals who lacked medical knowledge and knowledge of Dr. Isernia's recordkeeping or prescribing practices. J.A. 11 ¶ 26. Sovah Health concluded that the results of the audit indicated that Dr. Isernia did not adhere to management's earlier recommendations regarding his prescribing practices, and that he failed to comply with best practices of chronic opioid management per federal, state, and practice-specific standards.

In February 2021, an internal Sovah Health corporate group met to review the results of the audit. The next month, the group issued a final warning to Dr. Isernia, although Dr. Isernia claims that he never received any previous warnings regarding his work or prescribing practices. In April 2021, a Sovah Health employee filed a complaint with the Department of Health Professions ("DHP"), as required by state law, informing

4

DHP that Sovah Health had taken disciplinary action against Dr. Isernia. The DHP complaint noted that the action taken against Dr. Isernia included a final written warning "as a result of conduct that may cause injury to patients." J.A. 13 ¶ 31.

At some point Sovah Health conducted a follow-up audit of Dr. Isernia's practices. In December 2021, Dr. Isernia received notice of the results of the follow-up audit, which alleged continued violations and non-compliance with various policies and procedures. Dr. Isernia was placed on administrative leave later that month and was terminated in January 2022. After he was terminated, Sovah Health informed Apogee Physicians, (another hospital in Martinsville, VA where Dr. Isernia worked as a hospitalist) that Dr. Isernia was no longer allowed to work at Apogee Physicians.

## II.

Dr. Isernia filed a complaint in federal court in April 2022, asserting claims under Virginia state law for defamation per se, tortious interference, tortious interference with business expectancy/prospective economic advantage, and illegal retaliation against an employee. Appellees moved to compel arbitration, contending that they were third-party beneficiaries and thus entitled to enforce the arbitration provision in the Agreement. They also argued that Dr. Isernia was equitably estopped from refusing to arbitrate his claims against them. Dr. Isernia opposed the motion asserting that neither theory was applicable to his claims because he did not have any agreement with Appellees.

The district court identified the operative question before it as "whether the parties clearly and unmistakably committed disputes over arbitrability to arbitration." *Isernia v.*

5

*Danville Reg'l Med. Ctr., LLC*, 615 F. Supp. 3d 434, 439 (W.D. Va. 2022), reconsideration denied, 2022 WL 4076113 (W.D. Va. Sept. 6, 2022). The district court concluded that the parties had agreed to arbitrate issues of arbitrability because the Agreement incorporated the American Health Lawyer's Association's ("AHLA") arbitration rules. *Id.* The AHLA rules state:

> If the filing party (Claimant) produces a document that arguably requires arbitration of the claim under the Rules, the Administrator will appoint an arbitrator pursuant to the process described in this Section. After receiving appropriate evidence and argument, the arbitrator, once appointed, shall have the power to determine his or her jurisdiction and any issues of arbitrability. AHLA's decision to accept a claim has no bearing on the arbitrator's determination regarding jurisdiction.

AHLA Section 3.1 Criteria: J.A. 52.

Applying that rule to the parties' dispute, the district court held that an arbitrator must determine whether Dr. Isernia agreed to arbitrate his claims against Appellees. *Isernia v. Danville*, 615 F. Supp. 3d at 440. The district court granted Appellees' motion to compel arbitration and stayed the case pending resolution of the arbitration. *Id.*

Dr. Isernia moved for reconsideration. He argued that courts must determine a non-signatory's entitlement to enforce a contract before the non-signatory can enforce an arbitration provision. He also argued that an agreement by signatory parties to arbitrate arbitrability, without more, does not grant any rights to a non-signatory. Appellees opposed the motion and provided several bases for the district court to consider them third-party beneficiaries of the Agreement. The district court denied Dr. Isernia's motion for reconsideration without determining whether Appellees qualified as third-party beneficiaries. *Isernia v. Danville Reg'l Med. Ctr., LLC*, 2022 WL 4076113, at *5 (W.D.

6

Va. Sept. 6, 2022). In the district court's view, Dr. Isernia "delegated the resolution of . . . third-party enforcement questions to an arbitrator" by entering into the Agreement. *Id*. at *9. However, because the court recognized that there was "conflicting authority" and "substantial grounds for difference of opinion" on the issue, as evinced by a split among our sister circuits, it certified the following question for Fourth Circuit review:

> Whether a non-signatory to an arbitration provision that clearly and unmistakably incorporates arbitral rules delegating questions of "arbitrability" and "jurisdiction" to an arbitrator can move to compel arbitration of a third-party enforcement issue such that an arbitrator – and not a court – determines whether the non-signatory is entitled to enforce the arbitration provision against the signatory.

*Id*. at *11.

Although we had not yet opined on the issue at the time of the district court's decision, we clarified our position months later in *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279 (4th Cir. 2023), cert. denied, 2024 WL 674823 (U.S. Feb. 20, 2024). In *Tug Hill*, the plaintiff filed a Fair Labor Standards Act suit against a gas company for whom he had worked for approximately a year and a half. *Id*. at 282. He alleged that he qualified as an employee (though the company classified him as an independent contractor) and thus was owed overtime wages for time worked over forty hours per week. *Id*. at 282, 284. The plaintiff had contractually agreed to arbitrate all claims relevant to his agreement with RigUp, the parent of a company that helped him secure the gas company job. *Id*. at 282–83. The gas company, however, was not a party to that agreement. *Id*. at 282.

RigUp moved to intervene and the gas company moved to dismiss the action and compel arbitration based on the agreement between the plaintiff and RigUp. *Id*. at 284.

7

The district court granted both motions – allowing RigUp to intervene and compelling arbitration. *Id*. at 284–85; *see also Rogers v. Tug Hill Operating, LLC*, 598 F. Supp. 3d 404, 417, 421 (N.D. W. Va. 2022). The district court held that the gas company's non-signatory status was irrelevant because the contract's delegation clause assigned all questions regarding arbitrability to an arbitrator. *Id*. at 425. It alternatively concluded, based on an incorrect application of West Virginia law, that the gas company was permitted to enforce the contract as a third-party beneficiary. *Id*. at 427.

We reversed, concluding that the district court erroneously granted the motion to compel without first evaluating whether the gas company was entitled to enforce the agreement. *Tug Hill*, 76 F.4th at 288. In doing so, we recognized the longstanding principle that because "arbitration obligations are grounded in contract law" they are "as enforceable as other contracts, but not more so." *Id*. at 286 (citations omitted). As such, a litigant who was not party to an arbitration agreement may only compel arbitration pursuant to the agreement and the Federal Arbitration Act "if the relevant state contract law allows him to enforce the agreement." *Id*. at 287 (citation and emphasis omitted). Thus, we said, "as a precondition to granting [the gas company] the right to enforce any portion of an arbitration clause to which it was not a party," the district court was required to determine whether the relevant state contract law allowed the gas company to enforce the underlying agreement. *Id*. at 288.

That brings us to this case. The district court granted Appellees' motion to compel arbitration based on its mistaken belief that the incorporation of the AHLA rules in the Agreement automatically delegated all questions of arbitrability between the parties in this

8

case to an arbitrator. J.A. 82. The district court was mistaken. In fact, the inclusion of the AHLA rules in the Agreement has no bearing on the parties' dispute here unless Appellees can show that they are entitled to enforce the Agreement. Absent such a showing, an arbitrator would have no authority to make any determinations in this matter because a party who cannot demonstrate its entitlement to enforce an agreement cannot be entitled to any of the agreement's provisions. *See id*. at 287 (stating that nothing in the Federal Arbitration Act or Supreme Court jurisprudence allows such a "counterintuitive" result as permitting "a party with no contractual right to compel arbitration"). Thus, as in *Tug Hill*, the district court was required to determine whether Appellees were entitled to enforce the Agreement under Virginia law before compelling arbitration. Because "[w]e are a court of review, not first view," *Est. of Van Emburgh by & through Van Emburgh v. United States*, 95 F.4th 795 (4th Cir. 2024), we remand the case to permit the district court to evaluate Appellees' entitlement to enforce the contract in the first instance.

## III.

For the foregoing reasons, we reverse the district court's grant of Appellees' motion to compel arbitration and remand for the district court to determine whether Appellees are entitled to enforce the agreement between Dr. Isernia and Martinsville Physicians Practices, LLC under Virginia law. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*REVERSED AND REMANDED*

9